# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
JAN 1 1 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One LG Model LM-X210MA Cellular Phone<br>Serial#712CYVU051359;IMEI#352342-09-051359-9 | )<br>)<br>) (AC)<br>)<br>) | Case No.<br>19MJ0129 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2, incorporated herein by reference

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-2, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g) | Felon in Possession of Firearm; |
| 21 USC 841 & 846 | Possession with intent to Distribute a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Anthony Colon, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/11/19

_____
*Judge's signature*

City and state: San Diego, California        Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

I, Anthony Colon, Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device (hereinafter the **"Target Device #2[1]"**), as further described in Attachment A-2, and seize evidence of crimes, specifically, violations of Title 18, United States Code, Sections 922(g)(1) and 922(a)(1)(A) and Title 21 United States Code, Sections 841 and 846, as more particularly described in Attachment B-2:

> One LG Model LM-X210MA cellular phone
> Serial #712CYVU051359
> IMEI #352342-09-051359-9

This search supports an investigation and prosecution of Daveon PATTERSON (PATTERSON) for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. On May 2, 2018, law enforcement officers with the Asuza Police Department were working in San Bernardino County, along the 15 Freeway, based on information they had received from Las Vegas Drug Enforcement Administration (DEA) that an illegal transaction involving firearms and narcotics was about to occur in that location. Based upon that information, the law enforcement officers conducted surveillance on a vehicle that arrived at the suspected transaction location. The vehicle parked in different areas near the suspected transaction location, but the occupants never exited the vehicle. The vehicle then left the area of the suspected transaction location, but continued to stop and park several times along Baker Boulevard. The law enforcement officers continued to follow the vehicle and conducted a traffic stop after observing a traffic violation. A detective contacted the occupants of the vehicle and

---

[1] See separate cover for an application for a search warrant regarding Target Device #1.

identified the driver as Leroy THOMAS (THOMAS), and the front seat passenger as PATTERSON. During the traffic stop, PATTERSON advised the detective that there were rifles in the trunk of the vehicle. Additionally, THOMAS advised the detective that although he was not currently on parole or probation, he had previously served prison time in California. Upon receiving verbal consent to search the vehicle from both THOMAS and PATTERSON, the detective located two firearms. Both THOMAS and PATTERSON were subsequently taken into custody and transported to the Azusa Police Department jail. During the arrest, the detective seized two cellular phones, **Target Device #2** was located in PATTERSON's left front pants pocket. The detective retained custody of **Target Device #2** until it was released directly to ATF Special Agents on August 17, 2018. Upon receipt, **Target Device #2** was confirmed as being the same device recovered from PATTERSON by physical description and serial number documented upon seizure by the aforementioned detective with the Azusa Police Department. **Target Device #2** is currently in the custody of ATF San Diego, 9449 Balboa Avenue, Suite 200, San Diego, CA.

3. Probable cause exists to believe that the **Target Device #2** contains evidence relating to violations of Title 18, United States Code, Sections 922(g)(1) and 922(a)(1)(A) and Title 21 United States Code, Sections 841 and 846. It is believed that the **Target Device #2** was used by PATTERSON to communicate with co-conspirators during the firearm and narcotics distribution event.

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Device #2** for and to seize the items set forth in Attachment B-2 (incorporated herein) which I believe will be found in the item to be searched as described in Attachment A-2 (incorporated herein).

5. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews

and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

6. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, assigned to the San Diego, California Field Office. I have been employed as an ATF SA since January, 2018. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training course. As an ATF SA, I have received training in federal firearms laws and have been the affiant on search and arrest warrants for such violations, to include investigations on persons prohibited from possessing firearms. Prior to my employment with the ATF, I was employed as a Customs and Border Protection (CBP) Officer with the Department of Homeland Security for approximately five years at Miami International Airport in Miami, Florida. I received training for my role as a CBP Officer at FLETC's Officer Basic Training program. I also received training at the Miami-Dade Public Safety Training Institute through their Independent Police Academy program located in Miami, Florida.

7. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation. In the affidavit, all dates and times are approximate.

8. I have knowledge of the facts set forth below based on my review of the reports, recorded statements, and evidence collected in this case. I have also spoken with members of the Asuza Police Department Special Enforcement Team that originally conducted the arrest of THOMAS. Additionally I have reviewed their reports of the same.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in smuggling and importation of controlled substances, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in importation of controlled substances, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Firearm and narcotics dealers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Firearm and narcotics dealers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

   c. Firearm and narcotics dealers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   d. Firearm and narcotics dealers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   e. Firearm and narcotics dealers will use cellular telephones to synchronize an exact drop off and/or pick up time of their illegal cargo.

   f. Firearm and narcotics dealers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked police units.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network

authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a firearm and narcotics trafficker's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. Based upon my training and experience as a Federal Officer, and consultations with law enforcement officers experienced in firearms and narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yield evidence:

   a. tending to indicate efforts to illegally acquire, possess, and / or deal firearms and/ or narcotics;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   c. tending to identify co-conspirators, criminal associates, or others involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   d. tending to identify travel to or presence at locations involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device #2**; and/or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

13. On the evening of May 2, 2018, law enforcement officers from the Azusa Police Department were working in the area of San Bernardino County, along the 15 Freeway, based on information they received from the Las Vegas Drug Enforcement Administration (DEA) that a Southern-California Drug Trafficking Organization (DTO) was going to trade methamphetamine for two AK47-type rifles. Specifically, DEA agents notified the Azusa Police officers that they had intercepted conversations pursuant to a court authorized wiretap explaining that AK 47-type rifles would be delivered by an African-American male coming from the Las Vegas, Nevada area and that the transaction was to occur at a Chevron gas station in the city of Baker, CA at approximately 11:00 p.m.

14. At approximately 11:00 p.m. Azusa police detectives began surveillance of the Chevron gas station located at 72664 Baker Boulevard, Baker, CA. At approximately 1:30 a.m. on May 3, 2018, a detective observed a grey Kia Optima (CA license plate 7BNS895) arrive and park at the Chevron gas station. Surveillance units observed that the vehicle was occupied by two black males. The vehicle remained parked for a few minutes before driving to a vacant dirt lot near the gas station where the vehicle parked again. The vehicle then drove and parked in several other locations along Baker Boulevard, but with each stop, neither occupant exited the vehicle. After several minutes, the car drove away and law enforcement officers continued to follow the vehicle. After observing the vehicle violate California traffic laws, a traffic stop was conducted in the area of 72664 Baker Blvd, Baker, California, 92309. The detective made contact with the occupants of the vehicle, including the driver, Leroy THOMAS and passenger, Daveon PATTERSON.

15. During the traffic stop, PATTERSON, indicated to the detective that there were rifles in the trunk of the vehicle. The detective then received verbal consent from both PATTERSON and THOMAS, to search the trunk. THOMAS also stated that was not currently on parole or probation, but he had previously done prison time in California. During the search of the trunk, the detective located two Romarm/Cugir, model Mini Draco, 7.62x39mm, pistols, bearing serial numbers PE-1333-2018 and PE-1277-2018 respectively, both of which were collected as evidence.

16. Both THOMAS and PATTERSON were subsequently arrested and transported to the Azusa Police Department Jail. During the course of the arrest, the detective seized two cells phone. The second cell phone, identified as **Target Device #2**, was located in PATTERSON's left front pants pocket.

17. While at the jail, both individuals were interviewed by detectives. In a post-Miranda statement, PATTERSON stated that THOMAS pays PATTERSON to purchase firearms in Nevada for THOMAS because THOMAS is prohibited from owning or purchasing firearms. PATTERSON stated that he has purchased both handguns and rifles for THOMAS on several occasions in the past. According to PATTERSON, he and THOMAS were on their way to give the guns to the person that THOMAS deals with in San Diego. PATTERSON also stated that THOMAS sells or trades the firearms for drugs or money.

18. In a post-Miranda statement, THOMAS admitted to having the firearms in the vehicle in order to sell them in California. THOMAS said that he used PATTERSON to purchase the firearms in Nevada.

19. A review of THOMAS' criminal history revealed that he has multiple felony convictions, prohibiting the possession and / or purchase of firearms and ammunition. An additional query of law enforcement databases regarding THOMAS and PATTERSON revealed that neither individual is associated with, or holds a Federal Firearms License (FFL), additionally preventing either party from engaging in the business of dealing firearms.

20. Based upon my training and experience as an SA, and consultations with law enforcement officers experienced in firearms investigations, I am aware that it is common for individuals involved in illegal acquisition and possession of firearms to use cellular telephones, computers, tablets, and personal digital assistants (collectively Digital Devices). Digital Devices enable these individuals to maintain contact with their suppliers and negotiate the acquisition of firearms through phone calls, text messages, emails, and other digital communications. Therefore, Digital Devices often contain indicia of the identity of the individual and/or his/her associates, as well as their criminal activity, to include but not limited to, call logs, voicemail messages, text messages, electronic messages (e-mail), photographs, videos, address books, contact lists, calendars, notes, and ledgers. Additionally, individuals often utilize Digital Devices with photograph and video capabilities to take photographs and videos of their firearms and their use and possession of those firearms.

21. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the firearms activities of PATTERSON, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, videos, pictures and other digital information is stored in **Target Device #2**.

## SEARCH METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all

of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## GENUINE RISKS OF DESTRUCTION

25. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

26. The United States has not attempted to obtain this information by other means.

## CONCLUSION

27. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

28. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that PATTERSON used the **Target Device #2** to facilitate the offenses of Title 18, United States Code, Section 922(g)(1) – Felon in Possession of a Firearm and 922(a)(1)(A) – Willful engagement in firearms business without a license and Title 21, United States Code, Section 841 – Possession of Controlled Substance with Intent to Distribute and 846 – Conspiracy to Distribute Controlled Substance. The cellular telephone was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 922(g)(1) and 922(a)(1)(A) and Title 21, United States Code, Section 841 – Possession of Controlled Substance with Intent to Distribute and 846 – Conspiracy to Distribute Controlled Substance.

//

//

//

//

//

//

29. Because the **Target Device #2** was seized during the investigation of THOMAS' firearm trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by PATTERSON continues to exist on the **Target Device #2**.

30. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the **Target Device #2,** as described in Attachment A-2, and seize the items listed in Attachment B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief

Anthony Colon, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed before me this _11th_ day of January, 2019.

HONORABLE MICHAEL S. BERG
United States Magistrate Judge

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

    One LG Model LM-X210MA cellular phone
    Serial #712CYVU051359
    IMEI #352342-09-051359-9

**(Target Device #2)**

Target Device #2 is currently in the possession of the Bureau of Alcohol, Tobacco, Firearms and Explosives at 9449 Balboa Avenue, Suite 200, San Diego, CA.

## **ATTACHMENT B-2**

### ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 18, United States Code Sections 922(g)(1) and 922(a)(1)(A) and Title 21, United States Code Sections 841 and 846:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

   a. tending to indicate efforts to illegally acquire, possess, and / or deal firearms and/ or narcotics;

   b. tending to identify accounts, facilities, storage devices, and/or services— such as email addresses, IP addresses, and phone numbers—used to facilitate the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   c. tending to identify co-conspirators, criminal associates, or others involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   d. tending to identify travel to or presence at locations involved in the illegal acquisition, possession, and / or dealing of firearms and/ or narcotics;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device #2**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.